# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
KELSEY AND RYAN JARANILLA, *
on behalf of their minor daughter BJ, *
              *  No. 22-428V
     Petitioners, *  Special Master Christian J. Moran
              *
v.            *
              *  Filed: November 1, 2023
SECRETARY OF HEALTH *
AND HUMAN SERVICES, *
              *
     Respondent. *
* * * * * * * * * * * * * * * * * * * *

Michael A. Firestone, The Law Firm of Marvin Firestone, MD, JD & Associates, LLP., San Mateo, CA, for petitioners;
Jennifer A. Shah, United States Dep't of Justice, Washington, DC, for respondent.

### PUBLISHED DECISION DENYING MOTION FOR AN AWARD OF AN UNINCURRED COST ON AN INTERIM BASIS[1]

  Kelsey and Ryan Janarilla allege that various childhood vaccines caused their daughter, B.J., to suffer cerebral palsy and other injuries. In an effort to support their claim, the Janarillas have sought an order for the Vaccine Compensation Trust Fund to pay for genetic tests on B.J. The Secretary has opposed this request. As explained below, legal requirements and factual

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

impediments prevent this the approval of the Janarillas' request.  Thus, their motion is DENIED.

I.     **Medical History**

B.J. was born in January 2020 with some complications.  Exhibit 2 at 8.  However, B.J.'s pediatrician did not note any significant medical concerns during well-baby visits through July 2020.  Exhibit 5 at 39-67.

B.J. had another well-baby visit on July 27, 2020.  The pediatrician, Dr. Cotey, noted that B.J. was ahead of developmental milestones.  Exhibit 5 at 42.  Her exam was normal.  B.J. received her diphtheria-tetanus-acellular pertussis, inactivated poliovirus, hepatitis B, pneumococcus, and rotavirus vaccines.  Id. at 41.

Ms. Jaranilla stated that in the next 15 days, B.J. was in her usual state of health.  Exhibit 1 (affidavit) at 1-2.  B.J.'s sleeping, eating, and playing habits did not change.  Id.

On August 12, 2020, which is 16 days after the vaccination, B.J. appeared to have a seizure for which she was taken to a local emergency department.  Exhibit 4 at 9.  Her temperature was 100.8.  Id. at 10.  Attempts to halt the seizures were not immediately successful and she was eventually intubated.  Id.  After the seizures were controlled, B.J. was transferred to Doernbecher Children's Hospital ("Doernbecher") at the Oregon Health & Science University.

B.J. remained hospitalized at Doernbecher for two weeks and was discharged on August 26, 2020.  Exhibit 6, passim.  B.J. underwent multiple tests, including multiple MRIs.  In the discharge report, a neurologist stated: "Diagnostically, it remains unclear if this represents a severe systemic viral infection or a viral illness unmasking a metabolic disorder."  Id. at 125.

In the ensuing months, B.J. continued to see various doctors and to participate in various types of therapies.  She was diagnosed as having cerebral palsy.

Mr. and Ms. Jaranilla eventually sought a second opinion from a neurologist, Jennifer Yuen.  Dr. Yuen ordered genetic testing.  Exhibit 9 at 11.  The tests evaluated B.J. for 304 genetic changes associated with genetic disorders.  The results, which were reported on April 19, 2021, detected some abnormalities but none that would explain B.J.'s clinical manifestations.  Id. at 28.

2

BJ's doctor, Amy Yang, reviewed the results regarding genetic testing. Dr. Yang suggested that parental genetic testing may be useful. She also recommended whole genome sequencing ("WGS"). Whole genome sequencing could "potentially pick up chromosome abnormalities; [B.J.] has not had a chromosome microarray (CMA) in the past. In addition, WGS in 2021 may reveal new variants in newly described genes." Exhibit 6 at 46-47 (May 14, 2021).

The health insurance company for the Jaranillas, United Healthcare, determined that it would not pay for the whole genome sequencing Dr. Yang recommended. Acting through a medical director, Dan Beruti, United Healthcare stated that its plan "doesn't cover unproven procedures." Exhibit 19 at 3 (Sept. 21, 2022). Dr. Beruti elaborated that whole genome sequencing "has not been shown to be helpful to [B.J.'s] condition." Id. at 4. He also stated that "This is a benefit determination, not a medical decision. Only you and your doctor can decide what medical care you need." Id. Finally, Dr. Beruti provided information about a process for appealing.

As discussed below, Mr. and Ms. Jaranilla maintain that March 28, 2021 genetic testing was not complete. Thus, they are requesting funding to obtain additional genetic testing.

## II.  Procedural History

Represented by Michael Firestone, the Jaranillas filed their petition on April 12, 2022 and medical records on May 13, 2022. After reviewing this material, the Secretary maintained that the Jaranillas are not entitlement to compensation. Resp't's Rep., filed Oct. 21, 2022. The Secretary noted that B.J.'s doctors did not link her vaccinations to her health problems. Id. at 10. The Secretary also noted that the Jaranillas had not presented a report from an expert. Id.

In a November 16, 2022 status conference, the Jaranillas suggested that a geneticist whom they had consulted, Dr. Dmitriy M. Niyazov, has recommended a whole genome test. The estimated cost was $3,000 to $5,000. They were directed to file a motion. Order, issued Nov. 22, 2022. A December 29, 2022 order directed the Jaranillas to support any forthcoming motion with information about their financial condition and the authority of special masters to order the Vaccine Trust Fund to pay for testing.

The Jaranillas submitted their motion on January 17, 2023. Their motion referenced the denial letter from United Healthcare and a letter from Dr. Niyazov, which they had previously filed as Exhibits 19 and 20, respectively, on December

16, 2022.  Dr. Niyazov recommends whole genome sequencing.  The motion provided no information about the financial circumstances of the Jaranillas.  The motion barely touched upon the authority of special masters to order payment for genetic testing.

The Secretary's initial response was not helpful.  Resp't's Resp., filed Feb. 20, 2023.  At best, the Secretary quoted the portion of the December 29, 2022 order directing the Jaranillas to provide information about their financial situation.  The Jaranillas filed some financial information on March 3, 2023.  Exhibits 29-32.  In light of this new evidence and in light of the deficiencies in the Secretary's initial response, the Secretary was directed to file another response.  Order, issued April 10, 2023.

Given a second chance, the Secretary opposed the award.  The Secretary maintained "there is no reasonable basis for petitioners' claim at this time," "petitioners have failed to actually incur this cost or make a special showing justifying an award of interim costs at this stage of the litigation" and "there is no evidence that WGS testing will advance petitioners' claim of vaccine causation." Resp't's Resp., filed April 25, 2023, at 1.[2]

Despite this array of arguments, the Jaranillas did not submit a reply within the time the Vaccine Rules allow.  Thus, their motion is ready for adjudication.

### III.  Overview of the Issues

Although not styled as such, the essence of the pending motion is a request for an award of costs on an interim basis.  The Jaranillas' motion implicitly raises a series of sequential questions.  First, whether petitioners are eligible under the Vaccine Act to receive an award of attorneys' fees and costs?  Second, whether, as a matter of discretion, petitioners should be awarded and costs on an interim basis?  These questions are addressed below.

### IV.  Eligibility for an Award of Attorneys' Fees and Costs

As an initial matter, interim awards of costs are available in Vaccine Act cases.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Since the Jaranillas have not received compensation from the Vaccine Program, they may be awarded "compensation to cover [their] reasonable

---

[2] Because the April 25, 2023 response presents substantive reasoning, all references to "Resp't's Resp." are to this document, not the response filed on February 20, 2023.

attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1). The Secretary has argued that the Jaranillas are not eligible for an award of costs on an interim basis for two reasons: they have not incurred the cost and they have not established a reasonable basis for their claim.[3]

### A. Incurred Costs

The Vaccine Act authorizes special masters to award compensation "to cover . . . other costs, incurred in any proceeding on such petition." 42 U.S.C. § 300aa–15(e)(1). Here, the Secretary argues "this 'cost' has not yet been 'incurred' in the proceeding on the petition, as required by Section 15(e)(1) of the [Vaccine] Act." Resp't's Resp. at 10.

In support, the Secretary cites Fester v. Sec'y of Health & Hum. Servs., No. 10-243V, 2013 WL 5367670, at *18-20 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). In Fester, a pro se petitioner requested an award to pay a retainer to a treating doctor who might submit an expert report. Id. at *4. Based upon how the Federal Circuit interpreted the term "incurred" in the Vaccine Act, the special master found that the petitioner in Fester had not incurred the retainer of the proposed expert because she was not legally obligated to pay the retainer. Id. at *16-17.

The outcome in Fester seems consistently, if infrequently, followed. The special master who denied the request for an advanced award in Fester also denied a request for $500 to obtain pathology slides from a medical examiner. Klein v. Sec'y of Health & Hum. Servs., No. 12-560V, 2013 WL 5428471 (Fed. Cl. Spec. Mstr. Aug. 14, 2013).

The Jaranillas cited Morales v. Sec'y of Health & Hum. Servs., No. 14-1186V, 2019 WL 4047626, at *9 (Fed. Cl. Spec. Mstr. July 30, 2019), as a case in which the parties stipulated that the cost of a genetic test would be "a litigation cost incurred by the Vaccine Program." Pet'r's Mot. at 4. However, Morales does not state whether Ms. Morales paid for the test and then sought reimbursement of a costs she had incurred.

In this case, the Jaranillas have not persuasively shown that they are legally obligated to pay for the cost of whole genome sequencing. It appears that they

---

[3] The Secretary has not argued that the Jaranillas lack good faith.

would like the testing, but they have not actually committed to paying for the testing.

Without having "incurred" the cost for whole genome sequencing, the Jaranillas do not qualify for an award of compensation now. This reason, by itself, supports the denial of their motion. Nevertheless, for sake of completeness, other points are discussed below.

### B. Reasonable Basis

Citing Cottingham v. Sec'y of Health & Hum. Servs., 971 F.3d 1337, 1346 (Fed. Cir. 2020), the Secretary asserts that to show a reasonable basis for the claim, petitioners are required to present more than a scintilla of evidence regarding the elements of their claim. Resp't's Resp. at 9. The Secretary also maintained "the current record does not establish a reasonable basis for petitioners' claim." Id. at 11.

The meaning of "reasonable basis" and how petitioners satisfy the reasonable basis standard are issues in cases pending at the Federal Circuit. Illumination on these topics in precedential opinions will help the parties and special masters understand them more.

Because of the uncertainties regarding what reasonable basis means, an argument from the Jaranillas would have been appropriate. However, they did not address reasonable basis in their January 17, 2023 motion. Even after the Secretary argued the case lacked reasonable basis, the Jaranillas did not submit a reply, attempting to refute the Secretary's argument.

Under these circumstances, a determination regarding reasonable basis is not advisable. As explained above, the Jaranillas' motion fails because the Jaranillas have not incurred the cost of whole genome testing. Therefore, commenting upon whether the case has reasonable basis is superfluous.

## V. Appropriateness of An Award of Costs on an Interim Basis

If the Jaranillas had established that they were eligible for an award of costs on an interim basis, that finding would be a necessary (but insufficient) step for an actual order. The Jaranillas would also be required to show that various discretionary factors favor an award on an interim basis, as opposed to the end of the case.

Interim awards should not be awarded as a matter of right. Avera, 515 F.3d at 1352. Instead, petitioners must demonstrate "undue hardship." Id. The Federal Circuit noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. The Federal Circuit has also considered whether petitioners faced "only a short delay in the award" before a motion for final fees could be entertained. Id.

The Federal Circuit has not attempted to define what constitutes "undue hardship" or a "protracted proceeding" specifically. In the undersigned's practice, interim awards may be appropriate when the amount of attorneys' fees exceeds $30,000 and the case has been pending for more than 18 months. See Order regarding Attorneys' Fees, issued July 6, 2022.

Here, the Secretary aptly states that the proceedings have not been protracted. The case has been slightly more than 18 months.

Moreover, whether a cost of $5,000 is an "undue hardship" is questionable. The Secretary maintains that the "estimated $5,000.00 cost of WGS testing is not an unusually burdensome amount. Petitioners are represented by experienced Vaccine Program counsel, who have likely had prior cases where causation or damages experts were needed and required a retainer fee for services." Resp't's Resp. at 11.

After the Secretary responded to the motion from Mr. and Ms. Jaranilla, Ms. Jaranilla submitted a sworn statement, attesting that she is "now a single mom with medical bills and a mortgage." Exhibit 29. Information about the financial status of Mr. Jaranilla, who is B.J.'s father and who is also a petitioner, was not provided.

Ms. Jaranilla states that inflation is making it difficult to stay on top of her finances. Exhibit 29. This stress is understandable. On the other hand, the monthly income of Ms. Jaranilla appears to exceed, by a few hundred dollars, her list of monthly expenditures. Compare Exhibit 30 (biweekly paystub) with Exhibit 29.[4]

Moreover, it is not readily apparent whether the financial circumstances of counsel of record should be considered. In most cases, attorneys representing petitioners advance the cost of an expert. See Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1520 (Fed. Cir. 1993) (endorsing a special master's use of

---

[4] Ms. Jaranilla's list of monthly expenditures (Exhibit 29) might be incomplete. However, this statement is the only source of evidence about how she spends her income.

experience in evaluating requests for attorneys' fees and costs); <u>Rehn v. Sec'y of Health & Hum. Servs.</u>, 126 Fed. Cl. 86, 93 (2016) (evaluating as to whether a petitioner's attorney experienced an "undue hardship").  Mr. and Ms. Jaranilla have not discussed whether their attorney can bear the cost of whole genome sequencing.[5]  The lack of development regarding "undue hardship" is another point suggesting that the motion should be denied.

Finally, whether Mr. and Ms. Jaranilla have appealed the initial decision from Dr. Beruti of United Healthcare is unknown.  Conceivably, presenting the letter from Dr. Niyazov might change the outcome at United Healthcare.  However, any failure to exhaust a potential remedy with the insurance company is the least significant reason for denying the pending motion.

## VI. Conclusion

In the Vaccine Program, petitioners have not often sought an award of costs before they have become obligated to pay the cost.  When petitioners have made such a request, special masters have tended to deny the request due to the Vaccine Act's requirement that any cost be "incurred."

In this case, Mr. and Ms. Jaranilla have not yet incurred the costs of whole genome sequencing.  Thus, their motion is DENIED.  Furthermore, Mr. and Ms. Jaranilla have not established that funds are not available for them or potentially their attorney to pay this expense.

Ms. and Ms. Jaranilla are further ordered to submit a status report regarding their proposed next steps.  Options may include, but are not necessarily limited to, (1) paying for the cost of whole genome testing with their own funds, (2) re-requesting coverage from their insurance company, and (3) obtaining report(s) from expert(s) regarding causation.  The deadline for this status report is 30 days after this order.

Accordingly, the following is ORDERED:

---

[5] To be fair, neither the November 22, 2022 order nor the December 29, 2022 order directed the Jaranillas to discuss the financial circumstances of their attorney.  Yet, the Secretary at least raised this issue in his April 25, 2023 response.  Thus, the Jaranillas had a chance to reply but did not.

8

1.      Petitioner shall submit a status report by **Monday, December 4, 2023**.

2.      The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed within the time the Vaccine Rules permit.

Any questions regarding this decision may be directed to my law clerk, Debbie Chu, at (202) 357-6360.

**IT IS SO ORDERED**.

s/Christian J. Moran  
Christian J. Moran  
Special Master